MARC J. FAGEL (Cal. Bar No. 154425)
ROBERT TASHJIAN (Cal. Bar No. 191007)
  tashjianr@sec.gov
THOMAS J. EME (Illinois Bar. No. 6224870)
  emet@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br>v.<br><br>PETER C. SON, JIN K. CHUNG,<br>SNC ASSET MANAGEMENT, INC., and SNC INVESTMENTS, INC.,<br><br>Defendants. | Case No. CV-09-2554 MMC<br><br>COMPLAINT |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY OF THE ACTION

1. Using false promises of high returns from foreign currency trading, defendants Peter C. Son and Jin K. Chung defrauded hundreds of investors in a Ponzi scheme. Son and Chung targeted Korean-American investors, inducing them to invest with their company, defendant SNC Asset Management, Inc. ("SNCA"). Son and Chung told investors that SNCA generated steady 50 percent annual profits from foreign currency trading and promised that SNCA would provide them with annual returns of up to 36 percent. Between 2003 and the end of 2008, defendants raised more than $80 million from investors.

2. In truth, defendants traded little or none of investors' money in foreign currency markets. Instead, defendants siphoned investor funds off for their own personal expenses and for

other uses unrelated to foreign currency trading. Investors nonetheless received monthly account statements from SNCA purporting to show substantial trading returns. Unbeknownst to investors, the account statements reported returns and account balances that did not exist.

3. The scheme collapsed in October 2008. Son and Chung drained SNCA's bank account and cut off all communications with investors. Before the collapse, SNCA transferred millions of dollars to Son, Chung, and a related entity, SNC Investments, Inc. ("SNCI"), including transfers to overseas bank accounts.

4. The Commission brings this action to address violations of the antifraud provisions of the federal securities laws by Son, Chung, SNCA, and SNCI. For the protection of investors, the Commission seeks injunctive relief prohibiting defendants from engaging in future violations; orders freezing defendants' assets and requiring them to repatriate foreign-held assets and provide an accounting; and orders requiring defendants to disgorge their ill-gotten gains and to pay civil money penalties.

**JURISDICTION**

5. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)].

6. This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa]. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

7. Venue is proper in the Northern District of California pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. During the period described in this complaint, SNCA had its principal place of business in this district and defendants Son and Chung resided in this district. In addition, acts, practices, and

courses of business that form the basis for the violations alleged in this complaint occurred in the district.

## INTRADISTRICT ASSIGNMENT

8. Assignment to the San Francisco Division is appropriate pursuant to Local Rule 3-2(d) because a substantial part of the events and omissions giving rise to the Commission's claims occurred, among other places, in Alameda County.

## DEFENDANTS

9. **Peter C. Son**, age 37, served as the Chief Executive Officer of defendants SNC Asset Management, Inc. and SNC Investments, Inc. In addition to his management position, Son is a part owner of SNC Asset Management, Inc. During the relevant period, Son resided in Danville, California.

10. **Jin K. Chung**, age 46, served as the Chief Financial Officer of defendants SNC Asset Management, Inc. and SNC Investments, Inc. Chung is also a part owner of SNC Asset Management, Inc. During the relevant period, Chung resided in Los Altos, California.

11. **SNC Asset Management, Inc.**, was incorporated in California in 2003 and headquartered in Pleasanton, California. SNCA purportedly traded in foreign currency markets on behalf of investors in a pooled investment program. Defendants solicited investor funds for placement in the program, raising more than $80 million. SNCA's operations ceased in October 2008.

12. **SNC Investments, Inc.**, was incorporated in California in 2003 and headquartered in New York City. During the relevant period, SNCI was registered with the Commodity Futures Trading Commission and a member of the National Futures Association. SNCI's business ostensibly focused on attracting customers who could direct their own foreign currency trading through individual accounts established with SNCI. SNCI's operations ceased in October 2008.

## FACTUAL ALLEGATIONS

**Defendants Raised Millions by Touting SNCA's Fictitious Trading Program**

13. Beginning no later than 2003 and continuing through at least October 2008, Son and Chung offered and sold investments in SNCA's purported pooled foreign exchange trading program. Foreign exchange trading, or "forex" trading, involves the buying and selling of different currencies. Forex traders seek to profit from changes in the relative values of the currencies.

14. Potential investors in SNCA were told that SNCA would manage and trade their money in its forex investment program and were promised returns of up to 36 percent annually. Defendants targeted Korean-American investors in the San Francisco Bay Area, relying on personal sales efforts, word-of-mouth, and advertisements in Korean-language newspapers to attract investor funds. Besides California, SNCA drew investors from at least four other states, South Korea, and Taiwan. During the relevant period, defendants raised more than $80 million from approximately 500 investors in SNCA's investment program.

15. Son and Chung described SNCA's supposed forex trading and strategy to potential investors and claimed that SNCA was highly successful. Son and Chung's representations included oral statements and documents indicating that SNCA had earned forex trading profits exceeding 50 percent every year since 2003. Son and Chung also represented that SNCA would pool investor money, use it to conduct forex trading, and provide investors with monthly returns from the trading ranging from two to three percent. Son and Chung facilitated visits to SNCA's office, where investors were able to view work stations with multiple trading monitors, ostensibly set up to allow SNCA employees to monitor market conditions relevant to forex trading.

16. Son and Chung's representations about SNCA's trading success were false and the monitors on display at SNCA's office were misleading. SNCA conducted little or no forex trading and did not generate the forex trading profits that Son and Chung claimed. SNCA's supposed forex investment program was a fabrication used by Son and Chung to attract investors.

17. Son and Chung also induced investors by touting Son and SNCA's association with SNCI. Ostensibly, SNCA and SNCI offered different investment opportunities to investors. SNCA purportedly conducted forex trading on behalf of investors in a pooled investment program; by contrast, SNCI allowed investors to conduct their own forex trading in individual accounts established with SNCI. Son and Chung jointly controlled SNCA and SNCI by managing the operations, finances, and staffing of both entities. Son focused on managing the operations of the entities and Chung focused on handling finances of the entities and SNCA investor matters. Both defendants participated in recruiting and managing employees at SNCA and SNCI.

18. Son and Chung provided potential SNCA investors with SNCI promotional materials suggesting that Son had led SNCI to prominence in the forex industry. SNCI brochures, given to SNCA investors, identified Son as SNCI's chief executive officer and founder, listed a Wall Street address for SNCI's "U.S. Headquarters," and assured investors that SNCI was registered with the Commodity Futures Trading Commission and subject to regulatory oversight. Calling forex "the most robust financial market in the world," the brochures touted SNCI's commodity pool operator services and maintained that SNCI was staffed with a "group of highly-qualified industry experts." The brochures emphasized SNCI's "risk management" and commitment to "high ethical standards." These representations created the false impression that Son led a successful forex firm in addition to SNCA and that SNCA investors could rely on SNCI's purported forex expertise. As Son and Chung knew, however, SNCI was a small firm that lost money in its own proprietary forex trading and at no time handled any forex trading for SNCA.

19. Son and Chung also provided potential SNCA investors with an excerpt from Business Week magazine about SNCI. According to the excerpt, SNCI was "bringing the potential of the forex market to the personal investor" and "gaining recognition as one of the leading forex broker-dealers in the industry." The excerpt was an advertisement, but with Son and Chung's knowledge, it had been altered to appear to be an article from the magazine. SNCA investors were not informed that the Business Week excerpt was an advertisement.

20. Son and Chung recruited and directed sales agents who also offered and sold the SNCA investment program. Son and Chung described SNCA's supposed forex trading program to the sales agents in the same way they represented it to investors. Son and Chung provided the sales agents with written promotional materials to use in their selling efforts. These materials included the SNCI brochure and Business Week excerpt and documents indicating that SNCA had earned forex trading profits exceeding 50 percent every year since 2003. As directed by Son and Chung, the sales agents distributed the false promotional materials to potential investors and investors. The sales agents repeated Son and Chung's description of SNCA's fictitious trading program to potential investors and investors.

21. By making materially false and misleading representations to investors to solicit their funds, including in meetings with investors, during visits to SNCA's offices, and in marketing materials and SNCI brochures, and by omitting to state material facts that were necessary to make representations made not misleading, Son and Chung acted knowingly or recklessly. SNCA and SNCI were controlled by Son and Chung, and both therefore also acted knowingly or recklessly in making material misrepresentations and omissions of material fact to investors to solicit investments.

### Defendants Misappropriated Investor Funds

22. Contrary to representations to investors, SNCA conducted little or no forex trading with investor funds. At the direction of Son and Chung, SNCA deposited most investor funds in a single bank account held in its name. (Some investor funds were deposited directly into Son and Chung's personal bank accounts.) Son and Chung controlled the SNCA account, writing checks and transferring funds from the account to pay purported forex "investment returns" and redemptions to certain investors, to pay sales commissions and other expenses related to the operation of the scheme, and to pay for their own personal expenses.

23. Rather than conduct forex trading, as investors were promised, Son and Chung used investor funds for their own purposes. For example:

- Son used investor funds to pay the mortgage on his $2.6 million home in Blackhawk, a gated community in Danville, California, his homeowner's association dues, and his country club dues;
- Son used SNCA investor funds to pay his wife a salary of $3,000 per month even though she did no work for SNCA;
- Son and Chung transferred SNCA investor funds to SNCI to help it meet regulatory requirements that it maintain certain levels of capital; and
- Son and Chung transferred SNCA investor funds to SNCI's Korean bank account, to Son's Korean bank account, and to the Korean bank account of a Korean company under Chung's control.

None of these uses of investor funds had any relation to SNCA's purported forex investment program or any legitimate business purpose. Defendants did not disclose these uses of funds to investors.

24. Son and Chung concealed their misuse of SNCA funds from investors. SNCA mailed monthly checks to some investors, purporting to pay them their promised "returns" on forex trading. (Other SNCA investors chose to let their supposed returns accumulate in their accounts.) The checks were not funded with forex trading profits as investors were led to believe. Rather, the checks were funded with deposits of new investor money and cash infusions from Son, Chung, SNCI, and a Korean company under Chung's control. Son and Chung directed the monthly check mailings and one of them signed each check.

25. SNCA provided some investors with unsecured promissory notes in exchange for their investment. The notes, signed by Son or Chung, had a renewable 12-month term and specified the fixed rate of return that the investors would receive. SNCA, at the direction of Son and Chung, misled investors into believing that the return on the notes would be generated by forex trading.

26. SNCA mailed monthly account statements to investors purporting to show the current balances in the accounts. Son and Chung directed an SNCA employee in preparing and mailing the statements, and Chung encouraged investors to view the account statements on a

1  private SNCA Web site. The account statements were false because the trading returns and
2  account balances they purported to show were fictitious. At times, the balance in SNCA's bank
3  account dropped under $100,000, while the investor account statements purported to show
4  balances in the investor accounts that totaled $20 million or more.

5  27.  After making their initial investments and receiving account statements, monthly
6  return checks, or both, some investors put even more money into SNCA's purported forex
7  investment program.

8  28.  In misappropriating investor funds, in using investor funds contrary to the
9  disclosed purposes, in misleading investors about the supposed profits generated by forex
10 trading, and in providing false account statements, Son and Chung acted knowingly or
11 recklessly. SNCA and SNCI were controlled by Son and Chung, and both therefore also acted
12 knowingly or recklessly in making material misrepresentations and omissions of material fact in
13 misappropriating investor funds and misleading investors.

### The Collapse of the Scheme

15 29.  In late October 2008, Son and Chung ceased the operations of SNCA and SNCI
16 without warning to investors. By mid-November 2008, Son and Chung depleted SNCA's and
17 SNCI's bank accounts, which currently hold less than $2,000 each. Son and Chung left their
18 residences in the San Francisco Bay Area and ceased communications with investors, who have
19 been unable to recover any funds from SNCA.

### FIRST CLAIM FOR RELIEF

*Violations of Section 17(a) of the Securities Act*

22 30.  Paragraph nos. 1 through 29 are re-alleged and incorporated herein by reference.
23 31.  Defendants have, by engaging in the conduct set forth above, directly or
24 indirectly, in the offer or sale of securities, by the use of means or instruments of transportation
25 or communication in interstate commerce, or of the mails: (a) with scienter, employed devices,
26 schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements
27 of material fact or by omitting to state material facts necessary in order to make statements made,
28 in the light of the circumstances under which they were made, not misleading; and (c) engaged in

transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

32. By reason of the foregoing, defendants have directly or indirectly violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and unless enjoined will continue to violate this provision.

## SECOND CLAIM FOR RELIEF

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5*

33. Paragraph nos. 1 through 29 are re-alleged and incorporated herein by reference.

34. Defendants, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities.

35. By reason of the foregoing, defendants have directly or indirectly violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder and unless restrained and enjoined will continue to violate these provisions.

36. Alternatively, SNCI knowingly provided substantial assistance to Son, Chung, and SNCA's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], and therefore is liable as an aider and abettor pursuant to Section 20(e) of the Exchange Act [15 U.S.C. §78t(e)]. Unless restrained and enjoined, SNCI will continue to aid and abet violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

I.

Enjoin all defendants temporarily, preliminarily, and permanently from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

II.

Enjoin SNCI temporarily, preliminarily, and permanently from aiding and abetting violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

III.

Enter an order freezing defendants' assets.

IV.

Order defendants to provide a verified accounting identifying (i) the location and disposition of all funds received from investors; (ii) the location and disposition of all accounts controlled by Defendants or held for their benefit; and (iii) the location and value of all investor, as well as personal or other assets currently held by defendants, or under defendants' control or over which they may exercise actual or apparent authority.

V.

Order defendants to repatriate to the territory of the United States any and all assets and funds, held by or in the name of or for the benefit of defendants, or over which any of them maintained or maintains or exercises or exercised control.

VI.

Order defendants to disgorge their ill-gotten gains according to proof, plus prejudgment interest thereon.

VII.

Order defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

IX.

Grant such other and further relief as this Court may determine to be just, equitable, and necessary.

Dated: June 8, 2009

Respectfully submitted,

_____
THOMAS J. EME
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION